Last case, Jarling v. Cora. May it please the court, my name is Anthony D'Augustino, counsel for the appellant, John Jarling. The question presented to this court is whether illegal malpractice judgment, findings based on negligence, were improperly declared nondischargeable under 523A4 of the bankruptcy code. The purpose of this appeal is not to challenge the basis for the findings of negligence. There are no facts in dispute here. However, the bankruptcy code requires us to look to more than mere negligence when determining nondischargeability. Exceptions to discharge are strictly construed against an objecting creditor and very liberally in favor of the debtor. Nondischargeability is an extreme measure and it contravenes the bankruptcy code's principles of affording the debtor a fresh start. That is why there is a very elevated showing of culpability required for nondischargeability. Therefore, not all legal malpractice judgments and not all debts are nondischargeable. The heightened standard that should be applied in situations like this under 523A4 are evidenced by the two leading cases. Bullock defines defalcation as requiring a culpable state of mind under 523A4 akin to a state of mind that is not subject to defalcation statutory natures. Fraud, immoral, immoral. Sotomayor, you know, the State court found in the malpractice suit that Mr. Yarling's conduct cost Cora $26,000. How is that consistent with Mr. Yarling's claim now that we cannot know whether he met Cora's expectations in the deal? It's a malpractice judgment unless Mr. Yarling did not meet Cora's expectations. Your Honor, that goes to the core of our appeal. Our appeal is based on the fact that the underlying courts based their decision on a violation of the rules of professional conduct and not the elevated standard required by 523A4. Mr. Yarling's conduct was negligent. However, he does not offer any defense for that conduct. He didn't meet the rules of conduct and that resulted in the legal malpractice judgment. However, even though he didn't meet the standard of care required for an attorney, Bullock and Pearson require a showing of something more than mere negligence. Bullock sets forth what amounts to a culpable state of mind requirement. While the record is clear as to two things. First, that all the courts underlying this one have found that Mr. Cora was represented by Mr. Yarling. Mr. Yarling was his attorney. However, at every phase underlying this court, Mr. Yarling has testified that his belief was that he was not Mr. Cora's attorney. Therefore, it's clear from the record that at the time of the con... And nobody has believed him. Nobody has taken that seriously, right? And yet at the same time, he's trying to argue that he did take reasonable care of the interests of this person that he also contends was not his client. That's a very confusing position to maintain. I don't think that Mr. Yarling can maintain that he had maintained the reasonable standard of care because there was a legal malpractice judgment that was entered against him. However, Mr. Yarling's contention is that the underlying courts, when examining his conduct, did not require evidence of something more than a violation of the rules of conduct. Well, I guess my biggest problem with that argument, and your attack on the district court and bankruptcy court decisions is so sweeping, is that I guess I just don't read them the same way. I read them as saying quite carefully that this violation was so egregious, so far beyond the pale, that it's reasonable to infer from that circumstantial evidence of the egregiousness that he at least met the gross recklessness standard under the Bullock case. Why is that incorrect? Because the error there is that the compounding factors that I believe the court has referenced, and cited in the Pearson case where a willful neglect was evidenced by a series of issues in the representation that the attorney missed. In our case, the court did base and conclude correctly that gross negligence is required under the Bullock case. Gross recklessness, excuse me. However, in arriving at that decision, there was no evidence offered that would indicate that there were compounding factors, as was the case. I've just described that this is just so beyond the pale. Failing even to communicate directly with your client, other than through the lawyer for the opposing parties. That's not just negligent, it's grossly reckless. I guess that seems like a perfectly reasonable conclusion to me. The bankruptcy court and the district court did arrive in their conclusion that Mr. Charling's conduct amounted to gross recklessness. However, I think absent from both opinions is an evidentiary finding that Mr. Charling's conduct amounted to gross recklessness. I'm not sure if that's an evidentiary finding or how that connection was made between his conduct, which did violate the rules of professional responsibility, as to how they rose to the level of something more than mere negligence, which is what the state court found. Look, the court didn't rely on simple violations of professional conduct rules. Sadly, everything that Mr. Yarling did was a complete failure of his duty to his client, and his elderly client suffered terribly as a consequence. I really, if this case isn't a gross deviation from the standard of conduct that a law-abiding person would observe in Mr. Yarling's situation, I truly, along with Judge Hamilton, don't know what would be. I mean, it's approached by opposing counsel to represent an elderly man who speaks no English, there's no sales contract, no title insurance, there's no way for Mr. Yarling to find out what his client wants because they don't speak the same language, except from the opposing side of the deal. And I know that the court didn't rely on the sale price, but let's face it, a $35,000 sale for a property with $106,000 to $110,000 appraisal is patently suspicious. I, this is a case that is really very bothersome. I understand the court's position, and I do understand that there are suspicious circumstances. However, I think that that needs to be weighed against the bankruptcy code's intent, that there be a very clear and elevated showing, evidence of something more. I think that the court is correct in pointing out that there was no evidence of value that its opinion could be based upon. Counsel, this case reminds me of a legal problem from a different area of the law, but having to do with Eighth Amendment deliberate indifference to the health and safety of prisoners, where deliberate indifference or criminal recklessness is treated as the standard. And in Farmer v. Brennan, the Supreme Court explained that the very obviousness of the danger or the risk could support an inference of actual knowledge, and thus recklessness. And I would think that that kind of circumstantial evidence of your client's state of mind based on the obviousness of the violations, the egregiousness of them, would also be reasonable here. I think that Mr. Jarling's conduct and his state of mind was that upon observing Mr. Cora, who the record reflects was, although elderly, an individual that managed his own finances, he observed him stop a closing to go to the bank and recognize that funds had hit his account. And even though he couldn't speak English, the dollar is a universal language. I think that Mr. Jarling's conduct doesn't rise to the level of gross negligence because it would be akin to a person in a vehicle approaching a yellow light. Their failure to brake is negligence. However, hitting the gas to beat the yellow light would be gross negligence. Mr. Jarling's conduct does not evidence that additional step, nor did the Court consider any additional evidence that would give rise to more than a violation of the rules, which is why we believe that the underlying judgment should be reversed, as there are no disputed issues of fact. Thank you, Mr. Ackerman. Mr. Ackerman. May it please the Court, good afternoon. My name is Bert Saichek, and I represent the plaintiff, the estate of Stanley Cora. I think that the reason it's hard for anybody to get their heads around this conduct not being recklessness to the extreme is because it doesn't make sense. There are so many factors that occurred up to and during the closing that nothing that happened could really be described as simply being negligence. Counsel, what's the strongest evidence that Mr. Cora wanted a life estate, and where do we find it? One of the exhibits was the transcript from the underlying trial court, which included the portion of the closing where the trial state judge concluded that that, in fact, was what Mr. Cora had hoped to accomplish. So that was a conclusion that the state trial judge drew from the circumstances? Correct, after a full trial in which Mr. Jarling participated, and we had evidence including experts, et cetera. To look at what the best evidence is of what the conduct being reckless here is, it's just such a fundamental part of being a lawyer, that you actually communicate with your client, that you know what they want. In order to do anything for your client, I just can't fathom coming anywhere with your client and saying, I'm going to do this for you, and put into motion a series of events. To me, it's akin to if a lawyer were to find that a client had trouble paying their bills, so they went and just on their own filed a bankruptcy petition for them, or on their own decided that a client would do better off not having a trial for a criminal case and pled them guilty. This man had no idea what was attempted to be accomplished, and their best argument that they raise is that Mr. Jarling appeared to believe that Mr. Cora knew what he was doing, because he wanted to see that he was getting money. But that just begs the question of getting money for what? None of this made sense at all. I know that they claim that Mr. Jarling had no duty to find out where this 90-year-old man who didn't speak English was moving to, but when he filled out the closing papers, some of those include real estate transfer declarations, and those were exhibits in our trial. And on those, you're supposed to list what the address of the parties are. And not surprisingly, the address that was listed for Mr. Cora was the address, in fact, that he was moving from. And there's just nothing that made sense about any level of care that was taken to accomplish what Mr. Cora wanted, and all of the warning signs about what was going on indicate that it was a blind eye. It was the head in the sand. And, in fact, the fact that Mr. Jarling didn't even know that he represented Mr. Cora, as he wants to claim now, of course everything went haywire at this. He wasn't looking out for his interests at all. He helped a man who couldn't speak English sell a home that he'd lived in for his entire life. It was almost within a mile, probably, distance from the attorney's office, and although he certainly doesn't admit that he had general knowledge about what the real estate market was, I submit that in 2002, roughly, when this happened, that selling a home for $35,000 made no sense. Oddly, Mr. Jarling admits that he actually did a tract search to see if there were any liens or judgments, I assume, on the property. I don't know why anybody would do that if you were actually representing a person selling the property and you're not providing title insurance. It seems like the contact you would take if you thought that you were looking out for the interests of the buyers. But notwithstanding that, since he did that, he knew that there were no liens, no encumbrances on the property, and here was a home that a man was living in, apparently habitable, and yet it was being sold for $35,000. There was no contract, as Justice Roebner noted. There was no title company. There was just nothing that would indicate that there was any protection being taken, and that was exacerbating the fact that nobody asked what Mr. Cora wanted accomplished, at least on its side of the table. And he ended up predictably being homeless with a small amount of money in his pocket, and a judgment was entered, and the evidence established what we were trying to prove, that the debt was already admitted in the bankruptcy petitions. Nobody disputed or denied it. The state court had found all of the elements about what we were trying to prove. There was only one issue in the ultimate amended complaint against Mr. Jarling, that he was supposed to sell the property subject to a life estate for Mr. Cora, and that didn't happen, and that was in the evidence. And there was just nothing that could be presented that would show that this was anything other than gross recklessness, if not deliberate indifference. And if there aren't any questions, I don't have anything to add. It doesn't appear so. Thank you. Thanks to both counsel, and the case will be taken under advisement, and the court will be in recess.